UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HEATHER M.,[1] | : | Case No. 2:24-cv-1108 |
| | : | |
| Plaintiff, | : | District Judge Michael H. Watson |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMSSIONER OF SOCIAL SECURTY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff Heather M. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #13), and the administrative record. (Doc. #7).

## I. Background

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff protectively applied for benefits on February 26, 2021, alleging disability commencing January 1, 2016, due to several impairments, including "acid reflux, allergy, depression, high cholesterol, inflammatory rheumatoid arthritis, neck fusion, pinch[ed] nerve in her back, [and] thyroid problems." (Doc. #7-6, *PageID* #319). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Matthew Winfrey on November 29, 2022. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. He reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2016, through her date last insured of March 31, 2018.

Step 2: Through the date last insured, she had the following severe impairments: obesity; degenerative disc and joint disease of the cervical spine; headaches; and impingement syndrome of the right shoulder.

Step 3: Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Through the date last insured, her residual functional capacity, or the most she could have done despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … except [Plaintiff] could up to frequently climb ramps and stairs. She should avoid climbing ladders, ropes, or scaffolds. She could up to frequently crawl. [Plaintiff] should avoid exposure to unprotected heights. [She] could occasionally reach overhead with the right upper extremity and could frequently handle and finger with the right upper extremity." (footnote omitted).

|  |  |
|---|---|
|  | Through the date last insured, she was unable to perform any past relevant work. |
| Step 5: | Through the date last insured, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. |

(Doc. #7-2, *PageID* #s 42-55). Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from January 1, 2016, the alleged onset date, through March 31, 2018, the date last insured. *Id.* at 56.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 40-56), Plaintiff's Statement of Errors (Doc. #11), and the Commissioner's Memorandum in Opposition (Doc. #13). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff asserts, "the ALJ's [RFC] finding is not based on substantial evidence, particularly as it relates to the intermittent nature of the Plaintiff's symptoms." (Doc. #11, *PageID* #1352) (capitalization omitted). Specifically, Plaintiff argues that her "periodic symptoms of major depressive disorder, headaches, and pain acting in combination with [her] upper extremity limitations would reasonably exceed employer tolerances for time off task, absences, and breaks per the full testimony of the vocational expert." *Id*. at 1354-55. Plaintiff cites medical evidence after her date of last insured to emphasize her deteriorating condition. (Doc. #11, *PageID* #s 1345-49). Additionally, Plaintiff contends that the ALJ's premise that Plaintiff's "unpredictable use of her arm" is adequately addressed by the vocational expert's testimony is flawed. *Id.* at 1353. In response, the Commissioner maintains that ALJ Winfrey properly considered the medical evidence after the date of last insured only as it "illuminate[d] that condition before the expiration of insured status, Plaintiff's combination of impairments and subjective complaints, and the record as a whole in crafting the Plaintiff's RFC. (Doc. #13, *PageID* #s 1361-69).

4

### A. Combination of Impairments

An individual's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). As such, the ALJ bears the responsibility for assessing an individual's RFC based on all the relevant evidence, 20 C.F.R. § 404.1546(c), and must consider all of an individual's medically determinable impairments, both individually and in combination. *See* Soc. Sec. R. 96–8p, 1996 WL 374184, *7 (Soc. Sec. Admin. July 2, 1996).

In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004). However, the ALJ still has an obligation to consider all of the evidence before him and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts … and nonmedical evidence…"). Further, the ALJ may not simply ignore evidence that does not support his decision. *See e.g., Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"); *Ackles v. Colvin*, No.

5

3:14CV00249, 2015 WL 1757474, at *6 (S.D. Ohio Apr. 17, 2015) (Ovington, M.J.), *report and recommendation adopted*, No. 3:14CV00249, 2015 WL 2142396 (S.D. Ohio May 6, 2015) (Rice, D.J.) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light.").

In this case, Plaintiff contends that the ALJ did not properly consider her major depressive disorder, headaches, and subjective pain complaints in combination with her right upper extremity limitations. (Doc. #11, *PageID* #1354).  In assessing an individual's RFC, the ALJ must consider all of an individual's medically determinable impairments, both individually and in combination. *See* Soc. Sec. R. 96–8p, 1996 WL 374184, *7 (Soc. Sec. Admin. July 2, 1996). Specifically, SSR 96-8p requires that an ALJ, when determining the RFC, must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996); *see also* 20 C.F.R. § 404.1545(e) (noting that the Commissioner will consider all of a claimant's medically determinable impairments, even if they are not severe). The Sixth Circuit has clarified an ALJ's obligation to consider non-severe impairments under SSR 96-8p in *Emard v. Commissioner of Social Security*, 953 F.3d 844 (6th Cir. 2020).  In *Emard*, the ALJ did not discuss a plaintiff's non-severe impairments when assessing the plaintiff's RFC. *Emard*, 953 F.3d at 851.  Nevertheless, the Court found that the ALJ's express reference to SSR 96-8p, her discussion of the functional limitations imposed by the plaintiff's non-severe impairments at Step Two, and her assurance that she had "considered the entire record and 'all symptoms,'" provided a sufficient basis to conclude that the ALJ properly considered all of the plaintiff's impairments when crafting the RFC. *Id.* at 851-52.

In this case, a review of the ALJ's decision reveals that he addressed all three factors. First, the ALJ expressly referenced SSR 96-8p in his summary of the applicable law. (Doc. #7-2, *PageID* #42) ("In making this [RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe[.]") (citing 20 C.F.R. §§ 404.1520(e) and 404.1545; SSR 96-8p)).  He noted at Step Two that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis," indicating consideration of Plaintiff's major depressive disorder in her RFC. *Id*. at 45. Further, when assessing Plaintiff's RFC, the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*. at 46.

Regarding Plaintiff's major depressive disorder, the ALJ at Step Two did discuss functional limitations, finding no more than mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Doc. #7-2, *PageID* #44). In finding her depression to be non-severe, he cited conservative treatment with medication, normal examinations, ability to cohabit with others, ability to drive and perform household chores, and Plaintiff's report that she had no issues getting along with others. *Id*.  Notably, no medical opinion in the record found that Plaintiff had any mental impairments, much less mental limitations to be incorporated into the RFC. (Doc. #7-3, *PageID* #s 163-70). Therefore, while the ALJ considered Plaintiff's major depressive disorder, by finding no more than mild limitations in all levels of functioning, he was not required to incorporate mental limitations in her RFC.

Additionally, the ALJ did consider Plaintiff's headaches in his RFC determination. (Doc. #7-2, *PageID* #s 49-50). While he rejected some post-date-last-insured medical evidence of increased severity and frequency of headaches, the ALJ credited Plaintiff's earlier complaints of headaches during the period of adjudication, expressly considering them under SSR 19-4p. *Id*. at 49. Thus, the ALJ's thorough analysis of Plaintiff's medical record and subjective complaints of headaches supports his consideration of them in combination with Plaintiff's other impairments.

Finally, the ALJ specifically recognized Plaintiff's pain complaints and incorporated relevant limitations into her RFC to the extent they were consistent with and supported by the evidence in the record. (Doc. #7-2, *PageID* #s 50-51). The ALJ included reaching and manipulative limitations and reduced her to the light exertional level by "considering [Plaintiff's] subjective reports regarding right upper extremity function." *Id.* at 51. Specifically, he explained that he "considered [her] radicular pain complaints and alleged right hand symptomology" when including the limitations of "occasionally reach overhead with the right upper extremity and frequently handle and finger with the right upper extremity." *Id*. at 50-51.  In reaching this conclusion, the ALJ exceeded any functional limitations in the opinions of the record reviewing physicians. Based on his initial review of Plaintiff's file in 2021, state agency physician, Leon Hughes, M.D., determined that "[t]here is not enough information prior to [the date last insured] to make a determination." (Doc. #7-3, *PageID* #164).  State agency physician, Rannie Amiri, M.D., reviewed Plaintiff's file upon reconsideration in 2022 and did not find any reaching or manipulative limitations. *Id*. at 168-69. Nonetheless, the ALJ included limitations based on both objective evidence showing reduced strength and "[Plaintiff's] complaints … included in the residual functional capacity to the extent that they are consistent with the evidence as a whole."

8

(Doc. #7-2, *PageID* #54). Thus, the ALJ's inclusion of reaching and manipulative limitations in her RFC based on Plaintiff's pain complaints substantially supports his consideration of them.

### B.     Post-Date-Last-Insured Evidence

As noted above, Plaintiff applied for Disability Insurance Benefits, alleging disability beginning January 1, 2016. To be eligible for Disability Insurance Benefits, a person must become disabled *during* the period in which she has met the statutory special earnings requirements. 42 U.S.C. §§ 423(a), (c), (d); 20 C.F.R § 404.130. "If a claimant is no longer insured for disability [insurance] benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002); *see Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status.") (citing 42 U.S.C. § 423(a) and (c); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988)). Plaintiff last met the insured status requirements on March 31, 2018, also known as her date last insured. (Doc. #7-2, *PageID* #41). Accordingly, to be eligible for Disability Insurance Benefits, Plaintiff had the burden of proving that she was disabled within the meaning of the Social Security Act prior to March 31, 2018. *See Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 479 (6th Cir. 2003).

*Neck, Spine, and Upper Extremity*

The ALJ recognized that Plaintiff "reported neck pain and was diagnosed with degenerative disc and joint disease of the cervical spine." (Doc. #7-2, *PageID* #50). However, the ALJ concluded that "the medical evidence of record contained minimal treatment for cervical spine degeneration during the period under consideration." *Id*. In support, the ALJ noted that,

9

while there was medical evidence of cervical fusion surgery in 2019, there was only pain medication prescribed for her cervical spine pain during the relevant period. *Id.* (citing Doc. #7-9, *PageID* #576). Additionally, while crediting Plaintiff's reports of paresthesia in her right upper extremity radiating from her neck in 2017, the ALJ noted that examinations during the time under adjudication were normal, showing a normal range of motion, negative Tinel's signs, and an EMG testing "exhibited no neuropathy or radiculopathy. *Id*. (citing Doc. #7-9, *PageID* #s 562-63, 619). While the ALJ recognized that an EMG test in 2022 showed "minimal right median neuropathy and right radiculopathies," he found that "those findings were not consistent with the evidence during the relevant period." *Id*. (citing Doc. #7-11, *PageID* #962).

Substantial evidence supports the ALJ's consideration of the conservative treatment and normal findings in the record prior to Plaintiff's date of last insured and his rejection of medical evidence after Plaintiff's date of last insured. Courts in the Sixth Circuit have held that medical evidence "after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status." *Bryan P. v. Comm'r of Soc. Sec.*, No. 23-10174, 2024 WL 1235538, at *3 (E.D. Mich. Jan. 16, 2024), *report and recommendation adopted*, No. 223CV10174TBGEAS, 2024 WL 1116930 (E.D. Mich. Mar. 14, 2024) (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020). While there were signs of deterioration in Plaintiff's cervical spine condition in 2019 and her neck and upper right extremity in 2022, these records were a year and three years past her date of last insured, respectively, and conflicted with treatment and examinations during the relevant period. (Doc. #7-2, *PageID* #50). However, the ALJ did include reaching and manipulative limitations for the right upper extremity in Plaintiff's RFC because evidence past her date last insured "illuminated [her] condition before the expiration

of [her] insured status," finding that her later records accorded with complaints she made during the relevant period under consideration. *Id*. This distinction indicates the ALJ's mindfulness in reviewing all of Plaintiff's medical records, even those past the date of last insured, and incorporating them into his decision when substantiated by the relevant period of adjudication. Therefore, substantial evidence supports the ALJ's analysis of Plaintiff's neck, spine, and upper extremity medical evidence.

*Headaches*

The ALJ acknowledged that Plaintiff alleged a history of headaches of such severity that it would affect her ability to work. (Doc. #7-2, *PageID* #49). However, the ALJ found that Plaintiff did not report any "recurrent symptoms such as dizziness associated with headache pain to her providers" and that there was no "headache log or journal documenting the frequency, severity, persistence, or duration of [her] headaches/headache symptoms" during the relevant period of adjudication. *Id.* Additionally*,* the Plaintiff did not "seek recurrent emergent treatment for headache symptoms or headaches described as being status migrainosous or intractable." *Id*. Furthermore, while Plaintiff sought specific treatment for her headaches in 2020, this treatment began after her date of last insured. *Id*. Nevertheless, because Plaintiff alleged she had headaches in combination with other symptoms prior to the date of last insured, the ALJ "considered [Plaintiff's] headaches in accordance with SSR 19-4p during the period under adjudication." *Id*. (citing Doc. #7-9, *PageID* #558).

Substantial evidence supports the ALJ's analysis of Plaintiff's headaches. Although Plaintiff testified that she had headaches about 3-4 days per week, (Doc. #7-2, *PageID* #153), she reported she began having posterior headaches a week before an October 2019 doctor's visit—

11

more than a year after her date last insured. (Doc. #7-11, *PageID* #1048). While she did receive occipital nerve blocks, these were administered in 2020, two years after her date of last insured. (Doc. #7-11, *PageID* #s 1295-96). The ALJ therefore did not fully incorporate Plaintiff's alleged limitations into Plaintiff's RFC, but did recognize her headache complaints during the period before the date of last insured as illuminated by the later records. (Doc. #7-2, *PageID* #49). Accordingly, the undersigned finds that substantial evidence supports the ALJ's analysis of Plaintiff's headaches during the relevant period under adjudication.

*Shoulder*

The ALJ recognized that Plaintiff reported "right upper extremity symptomology" before her date of late insured. (Doc. #7-2, *PageID* #51); (Doc. #7-9, *PageID* #562). Although Plaintiff did not receive any shoulder imaging until October 2019, after her date of last insured, the ALJ considered her "shoulder degeneration in combination with the reports of radicular neck pain during the period under consideration." *Id.* (citing Doc. #7-9, *PageID* #601). The ALJ explained that the 2019 imaging showed "early arthritic changes," which, because of arthritis' degenerative nature and Plaintiff's 2017 complaints, it would be reasonable to consider it. *Id*. However, the ALJ did not rely on the 2021 shoulder imaging that showed further degeneration, as that level of degeneration was not supported during the period under adjudication. *Id.* (citing Doc. #7-10, *PageID* #669).

Substantial evidence supports the ALJ's analysis of Plaintiff's shoulder. The ALJ included reaching and manipulative limitations in his RFC that accorded with the reduced capacity Plaintiff reported in the use of her shoulder and signs of arthritis, indicating he found the 2019 shoulder imaging "illuminated [her] condition before the expiration of [her] insured status." (Doc. #7-2,

12

*PageID* #51); *Emard,* 953 F.3d at 850. However, as the 2021 imaging occurred three years after her date of last insured, the ALJ reasonably excluded such evidence as not supported within the period of adjudication. *Id*. Once again, this distinction indicates a thoroughness in the ALJ's analysis of all of Plaintiff's records to incorporate those substantiated by evidence within the period before her date of last insured. Therefore, the ALJ did not err in his inclusion of the 2019 shoulder imaging and his exclusion of the 2021 shoulder imaging.

In sum, while Plaintiff references medical evidence supporting further deterioration, the ALJ could only rely on evidence past the date of last insured that reflected her condition during the period of relevant adjudication, January 1, 2016 through March 31, 2018. (Doc. #11, *PageID* #s 1345-49); but see *Emard,* 953 F.3d at 850. As assessed above, the ALJ relied upon post-date-last-insured medical evidence supported by the alleged period of disability and properly rejected evidence not reconcilable with the relevant period. Therefore, the ALJ properly assessed Plaintiff's medical record.

    **C.**    **Vocational Expert Hypotheticals**

In assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (The ALJ is not required to incorporate a plaintiff's subjective complaints in hypothetical questions to the vocational expert if the ALJ finds them to be

unsupported by the record as a whole). However, an ALJ errs if the physical or mental limitations supported by the record do not appear in a hypothetical question later relied on in determining a plaintiff's RFC. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009).

During the hearing, the ALJ asked the vocational expert whether an individual that "would have no more than occasional overhead reaching with the right upper extremity and up to frequent handling and fingering with the right upper extremity" would be able to perform the vocational expert's identified jobs of garment sorter, marker, and packager. (Doc. #7-2, *PageID* #157). The vocational expert indicated that an individual would be able to perform this work. *Id*. When the ALJ asked if the individual would be precluded from work if the hypothetical was "occasionally hand and finger with the right extremity," the vocational expert answered affirmatively. *Id*. The ALJ then advanced several hypotheticals regarding off-task limitations, absences, and breaks—being off task for fifteen percent of the time, two absences per month, and one or two additional fifteen-minute breaks in the workday—to which the vocational expert testified that all would be work-preclusive. *Id*. at 158. The ALJ included the limitation of "occasional overhead reaching with the right upper extremity and up to frequent handling and fingering with the right upper extremity" in Plaintiff's RFC, indicating that the RFC incorporated the vocational expert's response to Plaintiff's counsel that Plaintiff's "periodically unpredictable use of the right upper extremity" was "incorporated [into] such situation and such limitation would not change responses to her vocational testimony." *Id*. at 46, 159. Plaintiff contends that substantial evidence does not support the ALJ's RFC finding, as it is not clear whether the vocational expert included Plaintiff's upper extremity limitation in her responses to "off-task time, absences, and breaks." (Doc. #11, *PageID* #1354).

In this case, Plaintiff has not shown that the ALJ erred in the hypothetical questions posed to the vocational expert. First, Plaintiff does not point to any evidence in the medical record that supports she required off-task time, absences, and breaks. Second, the state agency reviewers' opinions, the only medical opinions in the record, did not opine that Plaintiff needed any temporal limitations. (Doc. #7-3, *PageID* #s 163-70). Because the ALJ did not find any support for these limitations in the medical evidence or other evidence in the record, the ALJ did not pose or rely on improper hypothetical questions in crafting his RFC. *Griffeth,* 217 F. App'x at 429. Therefore, substantial evidence does support the ALJ's RFC finding.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. #11) be **DENIED;**

2. The Commissioner's non-disability finding be **AFFIRMED**; and

3. The case be terminated on the Court's docket.

January 28, 2025

s/ *Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).