UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Heather M.,

    Plaintiff,

    v.

Commissioner of Social Security,

    Defendant.

Case No. 2:24-cv-1108

Judge Michael H. Watson

Magistrate Judge Silvain, Jr.

## OPINION AND ORDER

Plaintiff applied for disability insurance benefits but was denied initially and on reconsideration. ECF No. 7-3 at PAGEID # 162–70. She then attended a telephonic hearing before an Administrative Law Judge ("ALJ"), who ultimately found her not disabled. ECF No. 7-2 at PAGEID # 37–57. The Appeals Council denied Plaintiff's request for review, *id.* at PAGEID # 25, rendering the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Plaintiff thereafter filed suit in federal court. ECF No. 1. The Magistrate Judge has issued a Report and Recommendation ("R&R"), recommending the Court overrule Plaintiff's Statement of Specific Errors and affirm the Commissioner's decision. ECF No. 14. Plaintiff objects. ECF No. 15.

### I.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b), the Court reviews *de novo* those portions of the R&R to which Plaintiff properly objected. Fed. R. Civ. P. 72(b).

## II. ANALYSIS

Plaintiff's objection centers on the accuracy of a footnote in the ALJ's decision, given questions posed to the vocational expert ("VE") at the oral hearing. Namely, the ALJ included a footnote at page 7 of his decision, right after describing Plaintiff's residual functional capacity ("RFC"). ECF No. 7-2 at PAGEID # 46. The RFC limits Plaintiff to, *inter alia*, occasionally reaching overhead with her right upper extremity and frequently handling and fingering with her right upper extremity. *Id.* The footnote to that limitation states:

> The claimant's attorney questioned the vocational expert at hearing [sic]. The attorney asked the expert if her vocational responses to the undersigned's hypotheticals, regarding use of right upper extremity, incorporated the situation where the claimant had periodically unpredictable use of the right upper extremity, resulting in no control over her schedule. The vocational expert testified that her responses to the undersigned incorporated such situation and such limitation would not change responses to her vocational testimony.

*Id.*

At bottom, Plaintiff seems to object that this footnote is inaccurate. That is, Plaintiff suggests the VE's testimony was vague and that the ALJ wrongly construed it as meaning that she incorporated into her answers to his questions regarding the use of the upper right extremity a hypothetical plaintiff who also had periodic unpredictable use of that upper right extremity. Therefore, Plaintiff's objection seems to continue, because the VE never actually testified that she incorporated periodic unpredictable use into the hypotheticals, she necessarily never testified that a person with the limitations contained in the RFC and an

additional periodic inability to use their right arm could work. *See generally* ECF No. 15 ("[T]o the extent the ALJ's RFC is based on his understanding that limitations related to the claimant's intermittent upper arm symptoms are already incorporated into the RFC, this premise is flawed.").

On *de novo* review, the objection is **OVERRULED**. During the hearing, the ALJ asked the VE a series of questions concerning the work ability of hypothetical plaintiffs. ECF No. 7-2 at PAGIED # 156–59. The hypotheticals mostly built upon one another, meaning that, with each question, the VE was told to assume the hypothetical plaintiff in the pending question had the limitations of all prior questions *and* any new limitations contained in the pending question. *See generally id.*

The ALJ incorporated into the scenarios variations on the hypothetical plaintiff's ability to utilize their right upper extremity. Those specific scenarios each assumed no more than occasional overhead reaching with the right upper extremity, and the ALJ asked about two variations of the separate limitation on handling and fingering with the right upper extremity. *Id.* at PAGEID # 158. In response, the VE testified that a hypothetical plaintiff with all limitations from prior questions plus the limitation to occasional overhead reaching with the right upper extremity and *frequent* handling and fingering with the right upper extremity could perform work in the national economy but that the same hypothetical plaintiff who instead could only *occasionally* finger and reach with the right upper extremity could not. *Id.* Important to Plaintiff's objection, although Plaintiff had just testified

that her right arm would sometimes go numb and cause her to drop any object she was holding, *e.g., id.* at PAGEID # 148, 154, the ALJ's questions about limitations on the right upper extremity did not expressly ask the VE to assume that the hypothetical plaintiff would periodically be completely unable to use their right arm for periods of time due to numbness. *Id.* at PAGEID # 156–59.

But, Plaintiff's counsel asked follow-up questions to the VE. Plaintiff's counsel cleared up any confusion as to whether the periodic inability to use a right upper extremity would affect the hypothetical plaintiff's ability to work by asking the following question:

> I'm intrigued, though, with the unpredictable nature of the use of her right upper extremity. Through her testimony, you know, moving too much, exerting too much, everything would go numb, and she would not be able to use her hand. I see in the Judge's earlier hypotheticals were [sic] talking about a limitation to either frequent or occasionally handling and fingering, really trying to figure out the total amount of time per day that extremity could be used, but if it would just periodically unpredictably result in no use of the arm, whereas she could not control her schedule during the day, would your expertise indicate there'd be a change in your responses or is that already incorporated in your answers to the Judge's questions?

*Id.* at PAGIED # 159. The VE responded, "I believe it's already incorporated in the responses," and Plaintiff's counsel thanked the VE "for the clarification" and asked no follow up questions. *Id.*

The VE also testified that a hypothetical plaintiff who was off task 15% of the time each duty day, had at least two absences per month due to symptom flare, or needed at least one additional fifteen-minute break per duty day would be unable to work. ECF No. 7-2 at PAGEID # 158.

Based on this exchange, the Court agrees with the ALJ's interpretation of the VE's answer: the VE testified that a hypothetical plaintiff with the limitations explicitly mentioned by the ALJ *and* who was periodically unable to use their right arm could perform work but not if that person was limited to occasional fingering and handling with the right upper extremity or would be off task for 15% or more of the day, required at least two absences per month, or required an additional daily fifteen-minute break. This is the most logical interpretation of the testimony.

Accordingly, the ALJ accurately summarized the VE's testimony in Footnote 1 of the ALJ's decision.

Plaintiff seems to alternatively suggest that it would have been inconsistent for the VE to so testify—to state that a hypothetical plaintiff with the RFC limitations described by the ALJ (including frequent handling and fingering with the right upper extremity) and with the periodic inability to use their right arm could perform work but that a plaintiff who met the hypothetical scenarios regarding being off task, absent, or requiring a break could not work. Obj. 4, ECF No. 15. Thus, Plaintiff seems to alternatively contend, any RFC based on such conflicting testimony is not based on substantial evidence.

To the extent this is an alternative formulation of the objection, it also fails because there is no link between a plaintiff's periodic inability to use their upper right extremity and those work-preclusive limitations. Nor does Plaintiff point to any evidence in the record suggesting that periodic numbness would equate to being off task for 15% of the day, being absent at least twice a month, or

requiring an additional break.  Accordingly, there is nothing inconsistent about answering both that a hypothetical plaintiff with Plaintiff's RFC (including being periodically unable to use their right arm) could perform work and that a person who would be off task for 15% or more of the day, required at least two absences per month, or required an additional daily fifteen-minute break could not.

### III.  CONCLUSION

For the above reasons, Plaintiff's objection is **OVERRULED**.  The Court **ADOPTS** the R&R, **OVERRULES** Plaintiff's Statement of Specific Errors, and **AFFIRMS** the Commissioner's decision.  The Clerk shall enter judgment for the Commissioner and terminate this case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT